USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 2/5/2016

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
EDWIN SEGOVIA and JUNIOR HERMIDA,      :
on behalf of themselves and all                          :
others similarly situated,                                    :
                                                                          :
                                      Plaintiffs,            :            14-CV-7061 (NSR)
             -against-                                          :            OPINION & ORDER
                                                                          :
VITAMIN SHOPPE, INC.,                             :
                                                                          :
                                      Defendant.           :
------------------------------------------------------------X

NELSON S. ROMÁN, United States District Judge:

      Plaintiffs Edwin Segovia and Junior Hermida ("Segovia" and "Hermida," respectively,

and collectively, "Plaintiffs") bring this putative class action against Defendant Vitamin Shoppe,

Inc. ("Vitamin Shoppe" or "Defendant"), asserting claims for breach of express warranty, fraud

by uniform written misrepresentation and omission, and unjust enrichment, as well as violations

of New York's General Business Law §§ 349 and 350 and Florida's Deceptive and Unfair Trade

Practices Act.

      Before the Court is Defendant's motion to dismiss Plaintiffs' Complaint pursuant to

Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  For the following reasons,

Defendant's motion is GRANTED in part and DENIED in part.

## BACKGROUND

      The following facts are taken from Plaintiffs' Complaint unless otherwise noted, and are

accepted as true for purposes of this motion.

      Defendant Vitamin Shoppe sells dietary supplements, including Whey Tech Pro 24

("Whey Tech"), BodyTech 100% Casein ("100% Casein"), and BodyTech Primal Pro ("Primal

Pro") (collectively, the "Products").  (Compl. ¶ 1.)  Segovia, a New York resident, purchased Whey Tech from Vitamin Shoppe's website.  (*Id.* ¶ 8.)  Hermida, a Florida resident, purchased Whey Tech and 100% Casein at a Vitamin Shoppe store located in Florida.  (*Id.* ¶ 9.)

Plaintiffs allege that the Defendant "dramatically under-doses the digestive enzyme Aminogen [in the Products] and falsely claims [on Whey Tech's label] that lactase helps aid in the absorption and digestion of protein, such that none of the promised benefits are or can be delivered by the Products."  (*Id.* ¶ 3.)  Specifically, Plaintiffs assert that the following statements are false and misleading: (1) "Whey Tech Pro 24 is enhanced with lactase as well as Aminogen, a patented protein enzyme blend.  This grouping of enzymes may help aid in the absorption and digestion of protein," (Compl. ¶ 24); (2) that 100% Casein is "Enhanced with Aminogen, an enzyme that helps your body breakdown and absorb protein," (Compl. ¶ 25); and (3) with respect to Primal Pro, that the included Aminogen "help[s] support amino acid absorption and nitrogen retention from whey protein."  (Compl. ¶ 26.)

The bases for Plaintiffs' allegations that these statements are false and misleading is as follows.  With respect to Aminogen, Plaintiffs' allege that rather than containing a "clinically effective dos[e]" of Aminogen at 3-5% of protein intake, "Defendant uses a dosing protocol of less than 0.1% of Aminogen," which "[a]t the maximum [is] . . . 1/30 of the known clinically effective dosage of Aminogen."  (Compl. ¶¶ 37-39.)  Plaintiffs assert that two studies set forth the clinically effective dosages of Aminogen, one at 2.5 grams of Aminogen per 50 grams of whey protein, and the other at 1.2 grams of Aminogen per 40 grams of whey protein.  (*Id.* ¶¶ 33-35.)  Defendant's Products purportedly contain 25 milligrams or less of Aminogen per serving – "a fraction of the clinical dosing needed to provide the efficacy claims made by Defendant."  (*Id.* ¶ 36.)  With respect to lactase, Plaintiffs contend that these statements are false or misleading

because lactase does not aid, and in fact plays no role in, the digestion and absorption of protein. (Compl. ¶¶ 3, 22, 41-53.)

## STANDARD ON A MOTION TO DISMISS

"A case is properly dismissed for lack of subject matter jurisdiction under [Federal] Rule [of Civil Procedure] 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 94 (2d Cir. 2011) (internal citation and quotation marks omitted). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). In assessing whether there is subject matter jurisdiction, the Court must accept as true all material facts alleged in the complaint, *Conyers v. Rossides*, 558 F.3d 137, 143 (2d Cir. 2009), but "the court may resolve [any] disputed jurisdictional fact issues by referring to evidence outside of the pleadings, such as affidavits . . . ." *Zappia Middle E. Const. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000).

Under Federal Rule of Civil Procedure 12(b)(6), the inquiry is whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *accord Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010). The Court, again, must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, but the Court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. When there are well-pleaded factual allegations in the

3

complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* A claim is facially plausible when the factual content pleaded allows a court "to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

In ruling on a motion to dismiss, a "court may consider the facts as asserted within the four corners of the complaint together with the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010) (internal quotation marks and citation omitted). Courts also may consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993).

## DISCUSSION

### 1.  Choice of Law

As an initial matter, the Court must briefly discuss which states' laws apply to Plaintiffs' various claims. Defendant contends that New York law applies to Segovia's claims and Florida law applies to Hermida's claims based on their respective residence in those states. Plaintiffs' opposition to the instant motion is silent as to which states' laws apply.

"When a federal district court sits in diversity, it generally applies the law of the state in which it sits, including that state's choice of law rules." *In re Coudert Bros. LLP*, 673 F.3d 180, 186 (2d Cir. 2012). Applying New York's choice of law rules to class action claims for consumer fraud, breach of warranty, and unjust enrichment, the Southern District of New York explained that New York law requires application of the law of the state where each plaintiff resides and purchased the relevant product. *In re Grand Theft Auto Video Game Consumer*

4

*Litig.*, 251 F.R.D. 139, 146-50 (S.D.N.Y. 2008).  The Court agrees with the court's analysis in *In re Grand Theft Auto* and applies New York law to Segovia's claims and Florida law to Hermida's claims.

## 2.  Standing

Defendant contends that Plaintiffs lack Article III and class standing with respect to Primal Pro because neither Plaintiff purchased Primal Pro.  Plaintiffs contend that they have class standing to assert claims with respect to Primal Pro.

A plaintiff must have standing under Article III of the U.S. Constitution in order to invoke the jurisdiction of a federal court.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  To demonstrate Article III standing, "a plaintiff must allege (1) an injury in fact (2) fairly traceable to defendant['s] actions that is (3) redressable by the requested relief."  *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 158 (2d Cir. 2012) (citing *Lujan*, 504 U.S. at 560-61).

There is no dispute that Plaintiffs have Article III standing to assert claims based on their purchases of Whey Tech and 100% Casein.  Plaintiffs did not purchase Primal Pro and therefore do not have Article III standing in their own right to assert claims arising out of its purchase.  *See In re Frito-Lay N. Am., Inc. All Nat. Litig.*, No. 12-MD-2413 RRM RLM, 2013 WL 4647512, at *11 (E.D.N.Y. Aug. 29, 2013) ("It remains undisputed that plaintiffs lack Article III standing to assert claims arising out of products that they themselves did not purchase.")

The standing inquiry does not end here, however.  Where, as here, Article III standing has been established by a plaintiff against a defendant, "the inquiry shift[s] to a class action analysis."  *NECA-IBEW Health & Welfare Fund*, 693 F.3d at 159 (citing *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck–Medco Managed Care, L.L.C.*, 504 F.3d 229, 241 (2d

Cir. 2007)).  "The relevant question thus becomes whether plaintiffs can represent putative class members who suffered a similar injury arising out of the class members' purchases of products that the plaintiffs did not purchase."  *In re Frito-Lay N. Am., Inc. All Nat. Litig.*, 2013 WL 4647512, at *11.  The Second Circuit answered this question in *NECA-IBEW*.  Once Plaintiffs have satisfied their Article III standing requirements, "*NECA–IBEW* thus instructs that . . . their ability to represent putative class members who purchased products plaintiffs have not themselves purchased is a question for a class certification motion."  *In re Frito-Lay N. Am., Inc. All Nat. Litig.*, 2013 WL 4647512, at *12.

Although Defendant contends that *DiMuro v. Clinique Labs., LLC*, 572 F. App'x 27 (2d Cir. 2014) stands for the proposition that plaintiffs lack class standing to assert claims for products they did not purchase, *DiMuro* is easily distinguished.  In *DiMuro*, the Second Circuit found that the statements at issue related to "seven different products [with] different ingredients, and Clinique made different advertising claims for each product," whereas the statements at issue in *NECA-IBEW* were nearly identical, though made in different securities offering documents, thus providing the plaintiffs with class standing for related securities they did not purchase. *DiMuro*, 572 F. App'x at 29.  Here, like *NECA-IBEW*, the statements at issue on the three products are nearly identical and do not require dismissal at this juncture.

Accordingly, Plaintiffs have standing to assert claims for all three Products.

### 3.  Allegations of False and/or Misleading Statements

Plaintiffs' claims arise from two sets of statements, those related to Aminogen and those related to lactase.  To avoid unnecessary repetition, the following background and analysis is generally applicable to Plaintiffs' claims and will serve as the basis for the Court's decisions on each claim.

   *a.  Aminogen Claims*

   The Defendant's Products contain Aminogen and their labels include statements that Aminogen "may help aid in the absorption and digestion of protein" and that it "helps your body breakdown and absorb protein."  (Pl.'s Opp., Ex. A; Compl. ¶¶ 24-25.)  Plaintiffs assert, in sum and substance, that Defendant "dramatically under-doses" Aminogen in its Products.  (Compl. ¶ 3.)  Rather than containing a "clinically effective dos[e]" of Aminogen at 3-5% of protein intake, Plaintiffs allege that "Defendant uses a dosing protocol of less than 0.1% of Aminogen," which "[a]t the maximum [is] . . . 1/30 of the known clinically effective dosage of Aminogen." (Compl. ¶¶ 37-39.)  Plaintiffs contend two studies set forth the clinically effective doses of Aminogen, one at 2.5 grams of Aminogen per 50 grams of whey protein, and the other at 1.2 grams of Aminogen per 40 grams of whey protein.  (*Id.* ¶¶ 33-35.)  Defendant's Products purportedly contain 25 milligrams or less of Aminogen per serving – "a fraction of the clinical dosing needed to provide the efficacy claims made by Defendant."  (*Id.* ¶ 36.)

   The Court has reviewed the two studies incorporated in the Complaint and attached to Plaintiffs' opposition papers.  (*See* Pl.'s Opp., Exs. B, C.)  Although the studies were based on minimum dosages of Aminogen ranging from 1.2 to 2.5 grams per serving (3-5% Aminogen), the studies do not conclude, and in fact do not even imply, that such dosages are the minimum required to be clinically effective.  Moreover, the words "clinically effective" do not appear anywhere in either of the studies.  Rather, the studies found that: (1) supplementing 50 grams of whey protein with 50 milligrams/gram or 100 milligrams/gram of Aminogen "significantly increased the adsorption rate of [whey protein] over controls," (*Id.*, Ex. B at 7); and (2) "twice daily supplementation of 40 g[rams] of whey protein containing 3% . . . Aminogen . . . did not cause any measureable negative changes in various markers of clinical health."  (*Id.*, Ex. C at

7

25.)  Simply put, the studies support the statements made on the labels of Defendant's Products – that Aminogen may help aid in the digestion and absorption of protein – and provide absolutely no evidence to support Plaintiffs' allegation that 3-5% Aminogen is the minimum clinically effective dose.

Plaintiffs' claims mirror those made in *Hodges v. Vitamin Shoppe, Inc.*, No. CIV.A. 13-3381 SRC, 2014 WL 200270 (D.N.J. Jan. 15, 2014).  In *Hodges*, the plaintiff alleged violations of New Jersey's Consumer Fraud Act arising out of statements on a dietary product's label. There, like here, the plaintiff asserted that Vitamin Shoppe was knowingly under-dosing certain ingredients in the dietary supplement, and that the efficacy of such dosing levels was not supported by scientific evidence.  *Id.* at *4.  The court dismissed the plaintiff's complaint, holding that "[t]he implication that affirmative proof as to the effectiveness of an ingredient at one dosage renders it ineffective at some other, lower dose, as contained in the Product's formulation does not state a *prima facie* Consumer Fraud Act claim."  *Id.*  The court explained that reaching such a conclusion would "require a leap from the existing scientific research . . . made through nothing but speculation."  *Id.*  The same is true here.  There is simply nothing in the studies relied upon by Plaintiffs that supports the allegation that the 25 milligrams of Aminogen added to the Products is ineffective or is below a scientifically determined clinically effective dose.  More importantly, nothing in the studies calls into question the purportedly false and misleading statements identified by Plaintiffs, and in fact, the studies support the statements included on Defendant's Products that Aminogen aids in the digestion and absorption of protein.

The Court will apply this interpretation of the Aminogen statements as it considers the adequacy of Plaintiffs' pleadings below.

   *b.  Lactase Claims*

8

Plaintiffs' second set of allegations concern statements made regarding the benefits of lactase.  Whey Tech's label contains the following statements: "Whey Tech Pro 24 is enhanced with lactase as well as Aminogen, a patented protein enzyme blend.  This grouping of enzymes may help aid in the absorption and digestion of protein."  (Pl.'s Opp., Ex. A; Compl. ¶ 24.) Plaintiffs contend that these statements are false or misleading because lactase does not aid, and in fact plays no role in, the digestion and absorption of protein.  (Compl. ¶¶ 3, 22, 41-53.) Defendant counters that Plaintiffs' reading of these statements is unreasonable, and that the "grouping of enzymes" refers only to Aminogen, "a patented protein enzyme blend," and does not refer to lactase.  (Def.'s Mot. at 14.)

Viewing this statement in the light most favorable to Plaintiffs, it appears that lactase is part of the "grouping of enzymes" referred to in the statement.  First, lactase is an enzyme, (Compl. ¶ 44), a fact Defendant does not dispute.  The combination of lactase and Aminogen, both classified as enzymes or blends of enzymes, appears to relate directly to the "grouping of enzymes" referenced in the second sentence of the statement.  Other statements on the Whey Tech label confirm such an interpretation.  Directly below the nutritional facts and ingredient list for Whey Tech, there is the following statement: "Each serving provides 25 mg of a Proprietary Enzyme Blend consisting of Aminogen and lactase."  (Pl.'s Opp., Ex. A.)  There can be no doubt that this "Proprietary Enzyme Blend" consists of both Aminogen and lactase.  There is no reason to believe, at least at the motion to dismiss stage, that Defendant intended to refer to this "Proprietary Enzyme Blend" as containing both Aminogen and lactase in one section of the Whey Tech label, while simultaneously excluded lactase from the "grouping of enzymes" referenced on another part of the label.

The Court will apply this interpretation of the lactase statements to the claims below.

**4.  Breach of Express Warranty**

Count I of Plaintiffs' Complaint asserts a claim for breach of express warranty.  Plaintiffs contend that the Products' labels promised each product would contain a "clinically effective" dose of Aminogen, as well as lactase, which would help aid in the absorption and digestion of protein.  Defendant purportedly breached its express warranty when it: (1) provided products that did not contain an effective dose of Aminogen, and (2) incorrectly stated that lactase aids in the absorption and digestion of protein.  Defendant contends that Plaintiffs fail to state a claim under Florida law because they did not provide notice of the breach to Defendant, and under New York and Florida law because Plaintiffs fail to plausibly plead that Defendant breached its express warranty.

To assert a breach of an express warranty under Florida law, "a complaint must allege: (1) the sale of goods; (2) the express warranty; (3) breach of the warranty; (4) notice to seller of the breach; and (5) the injuries sustained by the buyer as a result of the breach of the express warranty."  *Jovine v. Abbott Labs., Inc.*, 795 F. Supp. 2d 1331, 1339-40 (S.D. Fla. 2011).  Defendant contends that it was not notified of the purported breach, a *prima facie* element of the claim.  Plaintiffs argue that a since-dismissed lawsuit, filed by Plaintiffs in Florida against Defendant in March 2014, provided five months' notice to Defendant of the alleged breach before filing the instant action.

Florida Statute § 672.607(3)(a) requires that a "buyer must within a reasonable time after he or she discovers or should have discovered any breach notify the seller of breach or be barred from any remedy."  Plaintiffs correctly note that "[t]he purpose of the notice requirement is to provide the seller the opportunity to 'cure alleged breaches and mitigate damages before a lawsuit is filed.'"  (Pl.'s Opp. at 16) (citing *Willard v. Home Depot, U.S.A., Inc.*, No.

10

509CV110/RS-MD, 2009 WL 4730644, at *2 (N.D. Fla. Dec. 7, 2009)).  Plaintiffs do not allege

in their Complaint or opposition papers that they provided notice to Defendant prior to the

initiation of the March 2014 Florida lawsuit.  Therefore, Plaintiffs failed to provide the required

notice prior to initiating the March 2014 lawsuit, which as a matter of law would have barred

recovery on this claim.  The mere fact that Plaintiffs voluntarily dismissed that lawsuit on August

20, 2014, *see Junior Hermida v. Vitamin Shoppe Inc.*, No. 2:14-cv-172, Docket No. 14 (M.D.

Fla. 2014), and refiled in New York less than two weeks later, (Docket No. 1), does not cure

Plaintiffs' deficiency.  Plaintiffs cite no authority permitting a prior lawsuit to satisfy the notice

requirement; to do so would appear to swallow the key purpose of the requirement – to provide

notice *prior to initiating a lawsuit* for the alleged breach.  Because Plaintiffs' failed to provide

notice prior to initiating suit, any attempt to replead would be futile.  *See Lucente v. Int'l Bus.

Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) ("Where it appears that granting leave to

amend is unlikely to be productive, however, it is not an abuse of discretion to deny leave to

amend.") (quoting *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993)).  Plaintiffs

are therefore barred from any remedy for the alleged breach under Florida law.[1]

Similarly, under New York law, to plead a breach of an express warranty, the complaint

must allege: "'(1) plaintiff[s] and defendant entered into a contract; (2) containing an express

warranty by the defendant with respect to a material fact; (3) which warranty was part of the

basis of the bargain; and (4) the express warranty was breached by defendant.'"  *PNC Bank, Nat.*

---

[1] Although Plaintiffs contend that such a determination is a question of fact, precluding dismissal on this basis, it is only a question of fact "[w]here the buyer gives some notice of the breach [and thus] the issues of timeliness and sufficiency are questions of fact."  *Royal Typewriter Co., a Div. of Litton Bus. Sys. v. Xerographic Supplies Corp.*, 719 F.2d 1092, 1102 (11th Cir. 1983).  Here, Plaintiffs failed to provide *any* notice of the breach prior to initiating the March 2014 action, making this a question of law for the Court to decide.

*Ass'n v. Wolters Kluwer Fin. Servs., Inc.*, 73 F. Supp. 3d 358, 369 (S.D.N.Y. 2014) (quoting *Promuto v. Waste Mgmt., Inc.*, 44 F. Supp. 2d 628, 642 (S.D.N.Y. 1999)).

As discussed at length above, Plaintiffs fail to allege a breach with regard to their under-dosing claims.  The Products' labels stated that Aminogen "may help aid in the absorption and digestion of protein" and that it "helps your body breakdown and absorb protein."  (Compl. ¶¶ 24-25.)  These statements are supported by the studies referenced in the Complaint.  Nowhere in these statements do the Products purport to contain "clinically effective" doses of Aminogen.  (Compl. ¶ 84.)  Nor is there support for the allegation that Aminogen is not effective at the dose included in the Products, as the studies cited do not provide a minimum clinically effective dose for Aminogen.  Plaintiffs therefore fail to allege a breach of this express warranty.

Plaintiffs do, however, adequately allege a breach of an express warranty with respect to Whey Tech's lactase claims.  Plaintiffs allege, and Defendant does not dispute, that lactase does not actually aid in the digestion and absorption of protein, as stated on the Whey Tech label.  At the motion to dismiss stage, these statements could be interpreted to assert that lactase aids in the digestion and absorption of protein.  Having alleged a breach, as well as the remaining elements of a breach of an express warranty claim under New York law, Plaintiffs' claims relating to lactase survive Defendant's motion to dismiss.

## 5.  Fraud by Uniform Written Misrepresentation and Omission

Plaintiffs next assert a claim for "fraud by uniform written misrepresentation and omission."  (Compl., Count II.)  The Court is not familiar with this cause of action and only one case, *Walters v. Pella Corp.*, No. 2:14-CV-00544-DCN, 2015 WL 2381335 (D.S.C. May 19, 2015), appears to have discussed this cause of action.  In *Walters*, the court dismissed the claim because it could not find that the cause of action existed under Nevada law.  Similarly, following

12

its own research, this Court cannot find evidence of any such cause of action ever being asserted

in New York or Florida.  Plaintiffs' claim is therefore dismissed without prejudice to replead, to

the extent Plaintiffs are able to plead a genuine cause of action.

**6.   Violation of New York General Business Law §§ 349 and 350**

Plaintiffs' third claim for relief alleges violations of N.Y. General Business Law §§ 349

and 350 ("GBL §§ 349 and 350").  GBL §§ 349 and 350 are "directed at wrongs against the

consuming public," *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,

85 N.Y.2d 20, 24 (1995), and were enacted to protect consumers from sellers' deceptive

practices.  *Id.* at 25.

In order to assert a *prima facie* case under GBL §§ 349 or 350, "a plaintiff must

demonstrate that (1) the defendant's deceptive acts were directed at consumers, (2) the acts are

misleading in a material way, and (3) the plaintiff has been injured as a result." *Maurizio v.

Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000) (citing *Oswego*, 85 N.Y.2d at 25).  A claim under

GBL § 350 has the additional requirement that it relate to false advertising.  *Koch v. Greenberg*,

14 F. Supp. 3d 247, 261 (S.D.N.Y. 2014) *aff'd*, No. 14-1712-CV, 2015 WL 5711578 (2d Cir.

Sept. 30, 2015) (citing *Andre Strishak & Associates, P.C. v. Hewlett Packard Co.*, 300 A.D.2d

608, 609 (2d Dep't 2002)).  "False advertising" is defined by the GBL as "advertising, including

labeling."  N.Y. GBL § 350-a.

Plaintiffs fail to state a claim under GBL §§ 349 and 350 with respect to their Aminogen

allegations.  As the Court already determined, these statements are not false or misleading.  Even

though Plaintiffs need not plead these claims with particularity under Federal Rule of Civil

Procedure 9(b), *see Dash v. Seagate Tech. (U.S.) Holdings, Inc.*, 27 F. Supp. 3d 357, 360

(E.D.N.Y. 2014), Plaintiffs nevertheless fail to demonstrate that the statements meet the standard

applied to GBL claims – that the statements "were likely to mislead a reasonable consumer acting reasonably under the circumstances."[2] *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013). The labels state only that the Products contain 25 milligrams of Aminogen and that Aminogen may help aid in the digestion and absorption of protein. These statements are true and supported by the studies referenced in the Complaint. There is no support for Plaintiffs' allegations that the studies found a minimum clinically effective dose, and the labels do not state that they are providing a clinically effective dose. These statements, as a matter of law, simply cannot be misleading to a reasonable consumer. The only way to reach such a conclusion is through speculating that the doses used in the studies were in fact the minimum clinically effective doses of Aminogen. Such a leap is not in any way supported by the studies.

Although Plaintiffs contend that determination of whether a statement is deceptive is a question of fact, it is well settled that a court may make this determination as a matter of law. *See Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013); *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26 (1995). The Court therefore dismisses Plaintiffs' GBL claims based upon deceptive statements concerning Aminogen.

---

[2] Plaintiffs argue that the proper standard "is not whether it is deceptive to the hypothetical reasonable person, but to 'the ignorant, the unthinking and the credulous who, in making purchases, do not stop to analyze but are governed by appearances and general impressions.'" (Pl.'s Opp. at 7) (citing *DeAngelis v. Timberpeg E., Inc.*, 51 A.D.3d 1175, 1178 (3d Dept. 2008). *DeAngelis* draws this standard from *De Santis v. Sears, Roebuck & Co.*, 148 A.D.2d 36, 38 (3d Dept. 1989), an Appellate Division, Third Department case from 1989. But the New York Court of Appeals adopted a different standard in 1995, after *De Santis*, outlining an "objective definition of deceptive acts and practices, [including] representations or omissions, limited to those likely to mislead a reasonable consumer acting reasonably under the circumstances." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26 (1995).

Turning to Plaintiffs' allegations concerning lactase, as discussed above, the Court finds that Plaintiffs sufficiently pled that the statement concerning lactase's ability to help aid in the absorption and digestion of protein is false and misleading.  In fact, Defendant does not dispute that lactase does not aid in such processes.  (*See* Def.'s Reply at 9.)  There is no question that such a statement, made on the label of a consumer good, is directed at consumers.  The Court therefore must decide whether Plaintiffs adequately allege that the statement is material and resulted in injury.

Plaintiffs allege that the statement is material because it is likely to mislead a reasonable consumer to believe that lactase in fact aids in the absorption and digestion of protein.  (Compl. ¶ 111.)  Plaintiffs also allege that Segovia would not have purchased, or would have paid less for, the Product had he known the true function of the ingredient, therefore injuring him.  (Compl. ¶¶ 112-114.)  Plaintiffs' allegations as to materiality clearly meet the requirements of Federal Rule of Civil Procedure 8(a) and the standards set forth in *Twombly* and *Iqbal.*  Although Plaintiffs' allegations as to Segovia's injury are more tenuous, the Court finds that the allegations are sufficient to make out a *prima facie* claim under GBL §§ 349 and 350,[3] as Plaintiffs allege that Segovia would not have purchased the Product, or would only have purchased the Product at a lower price, thereby suffering economic loss as a result.  Accordingly, Plaintiffs have set forth a *prima facie* case for violations of GBL §§ 349 and 350 based upon the lactase statement.

**7.  Violation of the Florida Deceptive and Unfair Trade Practices Act**

Plaintiffs also assert a claim under Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA").  "A consumer claim for damages under FDUTPA has three elements: (1) a

---

[3] Although Defendant contends that there are no advertisements at issue in the Complaint, therefore making GBL § 350 inapplicable, the plain language of the statute includes "labeling," which is squarely at issue here.

deceptive act or unfair practice; (2) causation; and (3) actual damages." *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1338 n.25 (11th Cir. 2012) (quoting *Rollins, Inc. v. Butland*, 951 So.2d 860, 869 (Fla. 2d Dist. Ct. App. 2006) (internal quotation marks omitted).

The parties disagree as to whether the heightened pleading standards of Federal Rule of Civil Procedure 9(b) apply to FDUTPA.  Although courts in Florida have differed in their conclusions as to whether heighted pleading standards apply, *compare Fellner v. Cameron*, 2012 WL 5387696 (M.D. Fla. Oct. 5, 2012) (requiring heighted pleading) *with State of Fla., Office of Atty. Gen., Dep't of Legal Affairs v. Tenet Healthcare Corp.*, 420 F. Supp. 2d 1288, 1310 (S.D. Fla. 2005) (requiring only ordinary pleading), the requirement of heightened pleading appears to turn on the whether the FDUTPA claim sounds in fraud.  *See Morano v. BMW of N. Am., LLC*, 928 F. Supp. 2d 826, 833-34 (D.N.J. 2013) ("where FDUTPA claims do happen to sound in fraud, federal courts will apply the heightened pleading standard of Rule 9(b).")  Here, Plaintiffs allege that Defendant's acts underlying the FDUTPA claim "constitute . . . fraud."  (Compl. ¶ 119.)  Accordingly, the Court will apply Rule 9(b)'s heightened pleading requirements to this claim.  Thus, Plaintiffs' factual allegations must reflect the "who, what, when, where and how of the alleged fraud." *Bauman v. Mount Sinai Hosp.*, 452 F. Supp. 2d 490, 503 (S.D.N.Y. 2006) (internal citation and quotation marks omitted).

The Court's analysis of Plaintiffs' FDUTPA claim is identical to its analysis of Plaintiffs' N.Y. GBL claim.  Accordingly, Plaintiffs' claim based upon the Aminogen statements is dismissed.  Plaintiffs' claim based upon the lactase statement survives, even under the more stringent requirements of Rule 9(b), as Plaintiffs' have alleged the existence of a false or deceptive statement, causation, and actual damages with the requisite specificity to survive a motion to dismiss.

16

**8.  Unjust Enrichment**

Count Five of the Complaint asserts a claim for unjust enrichment.  In New York, to state a claim for unjust enrichment, a plaintiff must plead that (1) the defendant was enriched (2) at the plaintiff's expense and (3) under the circumstances of such enrichment equity and good conscience require the defendant to make restitution.  *Hughes v. Ester C Co.*, 930 F. Supp. 2d 439, 471 (E.D.N.Y. 2013); *accord Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012) ("The basis of a claim for unjust enrichment is that the defendant has obtained a benefit which 'in equity and good conscience' should be paid to the plaintiff").  Similarly, in Florida, "a [p]laintiff must show that '1) the plaintiff has conferred a benefit on the defendant; 2) the defendant has knowledge of the benefit; 3) the defendant has accepted or retained the benefit conferred; and 4) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying fair value for it.'"  *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1328 (11th Cir. 2012) (quoting *Della Ratta v. Della Ratta*, 927 So.2d 1055, 1059 (Fla. Dist. Ct. App. 2006)).

Defendant contends that Plaintiffs' unjust enrichment claim should be dismissed because they failed to allege that an adequate legal remedy does not exist.  Plaintiffs contend that no such showing is required in Florida, but are otherwise silent as to the requirement in New York.  In New York, "[u]njust enrichment is an equitable claim that is unavailable where an adequate remedy at law exists."  *Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l N.V.*, 400 F. App'x 611, 613 (2d Cir. 2010).  In Florida, however, although "[i]t is generally true that equitable remedies are not available under Florida law when adequate legal remedies exist . . . that rule does not apply to unjust enrichment claims."  *State Farm Mut. Auto. Ins. Co. v. Physicians Injury Care Ctr., Inc.*, 427 F. App'x 714, 722 (11th Cir. 2011) *rev'd in part sub nom. on other grounds*,

17

*State Farm Mut. Auto. Ins. Co. v. Williams*, 563 F. App'x 665 (11th Cir. 2014) (internal citations omitted).  "It is only upon a showing that an express contract exists [between the parties] that the unjust enrichment . . . count fails."  *Id.* (internal citation and quotation marks omitted) (alterations in original).  As Plaintiffs have failed to plead that an adequate legal remedy does not exist, their New York claim is dismissed.  *See Fed. Treasury Enter. Sojuzplodoimport*, 400 F. App'x at 613; *see also Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*, 8 F. Supp. 3d 467, 484 (S.D.N.Y. 2014) (dismissing unjust enrichment claim on similar facts "where Plaintiff simply restates elements of other claims.").  The Court now turns to Plaintiffs' claim brought under Florida law.

To the extent Plaintiffs' unjust enrichment claim is based on statements concerning Aminogen, it fails because the claim is premised on the same under-dosing and efficacy theory that the Court has found to be without a factual basis.  (*See* Compl. ¶ 127.)  In other words, Plaintiffs fail to meet the basic pleading standards of Federal Rule of Civil Procedure 8(a), requiring dismissal.  *See Hodges*, 2014 WL 200270, at *5.

To the extent Plaintiffs' unjust enrichment claim is based on statements concerning lactase, Plaintiffs' allegations are sufficient to state a claim.  Plaintiffs' allege that Hermida purchased Whey Tech from Defendant, that Defendant was enriched as a result of Hermida's purchase and retains that benefit, and that it would be against equity and good conscience to permit Defendant to retain the ill-gotten benefit it received from Hermida in light of the false or misleading statements relating to lactase included on Whey Tech's label.  Similar allegations have been deemed sufficient to state a claim under Florida law.  *See In re Horizon Organic Milk Plus DHA Omega-3 Mktg. & Sales Practice Litig.*, 955 F. Supp. 2d 1311, 1338 (S.D. Fla. 2013).  Although Plaintiffs did not expressly state that they pled unjust enrichment as an alternative

18

theory of recovery, such a pleading is not required, and the Court construes this Count as pled in the alternative.  *See Donnelly v. Circuit City Stores*, Inc., No. 506-CV-387-OC-10GRJ, 2007 WL 896337, at \*3 (M.D. Fla. Mar. 22, 2007) (although plaintiffs did not expressly plead in the alternative, court permitted unjust enrichment claim because plaintiffs asserted in their response papers that they were pleading in the alternative, and the court interpreted the complaint consistently with that assertion).

**9.   Injunctive Relief**

Finally, Plaintiffs seek "an injunction requiring Defendant to cease and to remedy the effects of its unfair and deceptive practices" as alleged in the Complaint.  (Compl. ¶ 135.) Although pled as Count VI in the Complaint, an injunction is a remedy, not a cause of action. *See Miller v. Wells Fargo Bank, N.A.*, 994 F. Supp. 2d 542, 558 (S.D.N.Y. 2014); *Advantor Sys. Corp. v. DRS Tech. Servs., Inc.*, No. 6:14-CV-533-ORL-31, 2014 WL 3747667, at \*4 (M.D. Fla. July 29, 2014).  "The Court's task on a motion to dismiss is to consider the factual allegations in [Plaintiffs'] complaint to determine if they plausibly suggest an entitlement to relief, and not to determine the appropriate remedy."  *RJ Capital, S.A. v. Lexington Capital Funding III, Ltd.*, No. 10 CIV.24 PGG, 2011 WL 3251554, at \*16 (S.D.N.Y. July 28, 2011) (internal citation and quotation marks omitted).  Accordingly, the Court dismisses Plaintiffs' claim for injunctive relief.  The Court does not, however, take any position as to whether injunctive relief is an appropriate remedy for Plaintiffs' surviving claims, and such relief may only be granted upon a proper showing.

**CONCLUSION**

For the reasons stated above, Defendant's motion is GRANTED in part and DENIED in part. The Court hereby dismisses the following claims: breach of express warranty, in total under Florida law and with respect to the Aminogen statements under New York law; fraud by uniform written misrepresentation and omission; GBL and FDUTPA claims with respect to the Aminogen statements; unjust enrichment, in total under New York law and with respect to the Aminogen statements under Florida law; and injunctive relief. Defendant is directed to file an answer to the remaining claims within 30 days of the date of this Order. The Clerk of the Court is respectfully requested to terminate the motion at ECF No. 30. The parties are directed to appear in person at an initial pretrial conference on March 22, 2016, at 10:30 a.m., and shall bring with them a completed case management plan.

Dated: February 5th, 2016
      White Plains, New York

SO ORDERED:

                NELSON S. ROMÁN
               United States District Judge