USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12/12/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
EDWIN SEGOVIA,
on behalf of himself and all
others similarly situated,

      Plaintiff,      14-CV-7061 (NSR)
-against-            OPINION & ORDER

VITAMIN SHOPPE, INC.,

      Defendant.
------------------------------------------------------------X

NELSON S. ROMÁN, United States District Judge:

  Plaintiff Edwin Segovia ("Plaintiff" or "Segovia") filed this putative class action lawsuit on September 2, 2014, alleging that Defendant Vitamin Shoppe ("Defendant") engaged in false and misleading labeling of various protein supplement products. (Compl., ECF No. 1.) Following this Court's July 27, 2016 decision, Plaintiff's only remaining claims are for breach of express warranty and violations of New York's General Business Law ("GBL") §§ 349 and 350 relating to the lactase statements on the label of Defendant's Whey Tech Pro 24 product.

  Currently before the Court is Defendant's motion to for summary judgment on the remaining claims. For the following reasons, Defendant's motion is GRANTED.

## BACKGROUND

  The Court assumes the parties' familiarity with the underlying facts and prior proceedings in this case, as outlined in the Court's previous two opinions in this matter and Magistrate Judge Lisa Smith's July 1, 2016 report and recommendation. *Segovia v. Vitamin Shoppe*, No. 14-CV-7061 (NSR), 2016 WL 8650462 (S.D.N.Y. Feb. 05, 2016) ("*Segovia I*"); *Segovia v. Vitamin Shoppe*, No. 14-CV-7061 (NSR) (LMS), (S.D.N.Y. July 1, 2016) ("*Segovia*

*II*"); *Segovia v. Vitamin Shoppe*, No. 14-CV-7061 (NSR), 2016 WL 4051870 (S.D.N.Y. July 27, 2016) ("*Segovia III*").

To briefly summarize, Plaintiff Segovia, a New York resident, along with former Plaintiff Junior Hermida, a Florida resident, brought this putative class action challenging the labels on three dietary supplements sold by Defendant—Whey Tech Pro 24, 100% Casein, and Primal Pro. *Segovia I*, 2016 WL 8650462, at *1. Plaintiffs alleged that Defendant's labels misrepresented the function of the products' Aminogen and lactase ingredients and their ability to aid in protein absorption. *Id.*

On February 5, 2016, this Court issued an opinion dismissing all of Plaintiffs' Aminogen-based claims, finding that Plaintiffs failed to provide any scientific support for their allegation that the Aminogen dose in Defendant's products was ineffective. *Id.*, at *4. In an opinion adopting Judge Smith's July 1, 2016 report and recommendation, the Court also dismissed Plaintiff Hermida and any remaining Florida law claims from this action. *Segovia II*, 2016 WL 4051870, at *1. Thus, only the claims pertaining to Defendant's allegedly misleading lactase statements remain, including Plaintiff's claims for breach of express warranty and violations of GBL §§ 349 and 350.

The two specific lactase statements at issue are contained on the label of Defendant's Whey Tech Pro 24 protein supplement. The first statement asserts: "Whey Tech Pro 24 is enhanced with lactase as well as Aminogen®, a patented protein enzyme blend. This grouping of enzymes may help aid in the absorption and digestion of protein." (Pl.'s Local Civil Rule 56.1 Statement ("Pl.'s 56.1") ¶ 1, ECF No. 80.) The second statement, found on the back of the product's packaging, states: "Each serving provides 25 mg of a Propriety Enzyme Blend consisting of Aminogen and lactase." (*Id.*; Decl. of Michael R. McDonald in Supp. of Def.'s

Mot. for Summ. J. ("McDonald Decl."), Ex. A, Copy of Whey Tech Pro 24 Label, ECF No. 75).

Plaintiff—who has lifted weights consistently since 2014 and consumed protein powders since he was 15 years old—purchased Defendant's protein supplement with added lactase on March 3, 2014. (McDonald Decl., Ex. D, Segovia Dep., June 6, 2016, 18:1-16, 45:10–46:16.) When asked during his deposition why he purchased this particular protein supplement, Plaintiff responded:

> "[T]he flavor, and the profile looked good. The protein, and [] it had [] what's supposed to help you digest the proteins, it had Aminogen in it. And it said that you would [] get more, basically, bang for your buck out of the protein by this digestive enzyme that will help you digest the protein."

(*Id.* 53:7-16). Plaintiff elaborated that while "[a] lot of the proteins are very similar, [and] have similar profiles . . . the Aminogen part [of Defendant's product] stuck out." (*Id.* 53:21-24.) Plaintiff later reiterated that the reason he purchased Defendant's product and what "separated [it] from every other protein powder that [he] looked at before was the Aminogen aspect," which he believed would "help [him] absorb more of the protein." (*Id.* 75:17-24.)

When questioned whether he noticed that lactase was also referenced on Defendant's label, Plaintiff responded "I don't—maybe." (*Id.* 58:15-17.) Plaintiff was also uncertain if he had ever heard of lactase before the deposition, stating: "It's possible. You know. Like I said, I read a lot and, you know, I forget a lot as well." (*Id.* 58:19-21.) Finally, when asked if he had ever ingested a product that contained lactase, Plaintiff responded "Not to my knowledge." (*Id.* 58:22-23.)

Defendant filed the present motion for summary judgment on all of Plaintiff's lactase-related claims on November 11, 2016. (ECF No. 73.)

## STANDARD ON MOTION FOR SUMMARY JUDGMENT

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Benn v. Kissane*, 510 F. App'x 34, 36 (2d Cir. 2013) (summ. order).

Summary judgment is appropriate where a party who bears the burden of proof at trial "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "In such a situation, there can be no genuine issue of fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* (internal quotation marks omitted).

In deciding a motion for summary judgment, the Court must "constru[e] the evidence in the light most favorable to the non-moving party and draw[] all reasonable inferences in its favor." *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) (internal quotation marks omitted). However, the nonmoving party "may not rely on conclusory allegations or unsubstantiated speculation." *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (internal citation and quotation marks omitted). Further, "[s]tatements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment." *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999).

# DISCUSSION

## I.  Claims under New York General Business Law §§ 349 and 350

Plaintiff alleges that the label on Defendant's protein supplement misleadingly implies that lactase contributes to the product's unique ability to absorb proteins, in violation of New York's GBL §§ 349 and 350. (Pl.'s Mem. of Law in Opp. to Def.'s Mot. Summ. J. ("Pl.'s Opp."), at 4–5, ECF No. 78.) Defendant maintains, however, that it is entitled to summary judgment because Plaintiff cannot establish key elements of his claims. This Court agrees and grants summary judgment in Defendant's favor.

New York's GBL §§ 349 and 350 prohibit "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state" and materially misleading advertising, respectively. N.Y. Gen. Bus. Law §§ 349(a), 350. To recover under GBL § 349, a plaintiff must prove "that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941, 967 N.E.2d 675, 675 (2012).  While GBL § 350 relates specifically to false advertising, "the standard for recovery under § 350 . . . is otherwise identical to section 349."[1] *Goshen v. Mut. Life Ins. Co.*

---

[1] Though some courts have found that GBL § 350 imposes an additional requirement that a plaintiff prove reliance on the alleged false advertising, that "element appears to have been foreclosed by the New York Court of Appeals's decision in *Koch v. Acker, Merrall & Condit Company*, 18 N.Y.3d 940, 941, 944 N.Y.S.2d 452, 967 N.E.2d 675 (2012)." *Kommer v. Bayer Consumer Health*, 252 F. Supp. 3d 304, 310 n.2 (S.D.N.Y. May 18, 2017).  In *Koch*, the New York Court of Appeals explicitly ruled: "[t]o the extent that the Appellate Division order imposed a reliance requirement on General Business Law §§ 349 and 350 claims, it was error. Justifiable reliance by the plaintiff is *not* an element of the statutory claim." 18 N.Y.3d at 941 (emphasis added).

After the *Koch* decision, some courts have continued to hold that while "justifiable reliance" on Defendant's false advertising is not an element under GBL § 350, a Plaintiff must nonetheless demonstrate "actual reliance." *See, e.g., Merck Eprova AG v. Brookstone Pharm., LLC*, 920 F. Supp. 2d 404, 425 (S.D.N.Y. 2013). Other courts, however, have ruled that "neither Section 349 nor 350 require proof of reliance, justifiable or otherwise." *See Kommer*, 252 F. Supp. at 310 n.2 (internal quotations marks omitted) (citing *New World Sols., Inc. v. NameMedia Inc.*, 150 F. Supp. 3d 287, 330 (S.D.N.Y. 2015)); *see also In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 410 (S.D.N.Y. 2015). Further, the Second Circuit has since analyzed GBL § 350 claims under the same framework as § 349 claims, without imposing an additional "reliance" requirement. *See Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015).  This Court similarly applies the same test to each of Plaintiff's GBL claims.

*of N.Y.*, 98 N.Y.2d 314, 324 n.1, 746 N.Y.S.2d 858, 774 N.E.2d 1190 (2002).

Here, Plaintiff indisputably satisfies the first prong of the test—there is no question that a statement made on the label of a consumer good is consumer-oriented. Defendant nevertheless contends that summary judgment is appropriate because, as a matter of law, Plaintiff cannot satisfy the second prong of his GBL claims. (Def.'s Mem. Supp. Mot. Summ. J. at 12, ECF No. 73.) Specifically, Defendant argues that because Plaintiff's deposition testimony "incontrovertibly demonstrates" that Plaintiff never considered the lactase statements on the product's label, those statements were not *materially* deceptive. (*Id*.) Defendant further argues that far from being *materially* deceptive, the lactase statements at issue were not deceptive or misleading in any way. (*Id.* at 13.)

This Court finds Defendant's argument misguided. Whether an act is "materially misleading" within the meaning of the statute is an objective inquiry. *Food Parade, Inc. v. Office of Consumer Affairs of Cty. of Nassau*, 7 N.Y.3d 568, 575, 859 N.E.2d 473, 477 (2006) ("In determining what types of conduct may be deceptive practices under state law, [the New York Court of Appeals] has applied an objective standard . . ."). The relevant question is, therefore, not whether Plaintiff relied on Defendant's statements in his own purchasing decision, but whether the conduct is "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Id.* (internal quotation marks omitted). Indeed, the New York Court of Appeals has explicitly rejected reliance as a requirement for GBL §§ 349 and 350 claims. *Koch v. Acker, Merrall & Condit Company*, 18 N.Y.3d 940, 941, 944 N.Y.S.2d 452, 967 N.E.2d 675 (2012) ("To the extent that the Appellate Division order imposed a reliance requirement on General Business Law §§ 349 and 350, it was error."). Requiring that Plaintiff establish Defendant's statements as a material factor in his own purchasing decision would improperly apply a reliance

element to Plaintiff's GBL claims. Instead, Plaintiff must only establish that a "reasonable consumer" would be misled or deceived by Defendant's claims to satisfy the "materially misleading" prong of his GBL claims.

Whether Defendant's lactase statements would in fact be misleading or deceptive to a reasonable consumer is a closer question. Plaintiff alleges that Defendant's label misleadingly implies that both lactase and Aminogen aid in the absorption of protein. (Pl.'s Opp. at 11.) Defendant counters that the label is not misleading because it correctly informs consumers that the product generally contains an ingredient that may aid in the absorption of protein—Aminogen. While it is true that Defendant's product contains one ingredient that may help absorb protein, a reasonable consumer *could* be mistakenly led to believe that Defendant's product contains two such ingredients. Whether such deception is material or even likely, however, is a question better suited for the fact-finder in this case.

Nevertheless, this Court grants Defendant's motion for summary judgment because Plaintiff has failed to raise a triable issue of fact regarding any injury he suffered as a result of Defendant's allegedly misleading statements. While Plaintiff is not required to prove individual reliance Defendant's misleading statements to sustain a claim under GBL §§ 349 and 350, Plaintiff must prove that Defendant's deceptive act caused some actual injury. *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26, 647 N.E.2d 741, 745 (1995); *See also Rodriguez v. It's Just Lunch, Int'l*, No. 07-CV-9227 (SHS) (KNF), 2010 WL 685009, at *9 (S.D.N.Y. Feb. 23, 2010) ("A plaintiff seeking redress through NYGL § 349 must show that the defendant engaged in a material deceptive act or practice that cause actual, although not necessarily pecuniary, harm." (internal quotation marks and citations omitted)).

Here, Plaintiff alleges that his injury is pecuniary—he was forced to pay an inflated price for

a protein supplement that deceptively claims to contain *two* ingredients that "may help aid in the absorption and digestion of protein," when in reality, the product only contained one such ingredient (Pl.'s Opp. ¶ 1.) Though injuries of this type are typically sufficient to state a claim under GBL §§ 349 and 350, *Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*, No. 13-CV-3073, 8 F. Supp. 3d 467, 481 (2014) (collecting cases), Plaintiff has failed to proffer any evidentiary support for his allegations. The Complaint merely contains the conclusory assertion that "[a]s a result of Defendant's unfair, deceptive, fradulent, [] and misleading practices, Plaintiffs . . . have been unfairly deceived into purchasing [] [p]roducts, which otherwise they . . . would have purchased only at a price substantially lower than that charged by Defendant." (Compl. ¶ 4.)

The record is utterly devoid of factual support for Plaintiff's proposition—Plaintiff did not provide the prices of competing products for comparison, nor did Plaintiff actually testify at any point in his deposition that but for Defendant's lactase-specific claims, he would have been unwilling to pay Defendant's price. *Cf. Ebin v. Kangadis Food Inc.*, No. 13-CV-2311 (JSR), 2014 WL 737878, at *1–2 (S.D.N.Y. Feb. 25, 2014) (ruling that plaintiff had sufficient evidence to overcome a motion for summary judgment on his GBL § 349 claim where he provided a report of an expert and raw data comparing the prices of the product at issue to those of a relevant competitor). Instead, Plaintiff relies solely on the allegations contained in his Complaint. As this Court has already explained, however, a party "cannot overcome summary judgment by relying on mere speculation or conjecture as to the true nature of the facts because conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Miller v. City of New York*, 700 F. App'x 57, 58 (2d Cir. 2017) (internal quotation marks and citations omitted).

Given Plaintiff's failure to provide evidentiary support for his alleged injury—a necessary element of his GBL claims—there is no factual basis on which a reasonable jury could return a verdict for Plaintiff. Accordingly, Defendant is entitled to summary judgment on each of Plaintiff's GBL claims.

## II. Breach of express warranty claim

Defendant contends that it is similarly entitled to summary judgment on the issue of breach of express warranty because Plaintiff again fails to establish a key element of his claim. This Court agrees.

"Any affirmation of fact or promise made by the seller to the buyer which relates to goods and becomes part of the basis of the bargain creates and express warranty that the goods shall conform to the affirmation or promise" N.Y. U.C.C. §2–313(1)(a). To establish a *prima facie* case for breach of express warranty under New York law, a plaintiff must plead and prove "(1) the existence of a material statement amounting to a warranty, (2) the buyer's reliance on this warranty as a basis for the contract with the immediate seller, (3) breach of the warranty, and (4) injury to the buyer caused by the breach." *Goldemberg*, 8 F. Supp. 3d at 482 (citing *Avola v. La.-Pac. Corp.*, 991 F. Supp. 2d 381, 391 (E.D.N.Y. 2013)).

Here, Plaintiff has failed to establish the second prong of his *prima facie* showing—his reliance on Defendant's lactase claims. When asked what motivated him to purchase Defendant's particular product during his deposition, Plaintiff only discussed Aminogen and made no reference to lactase. (McDonald Decl., Ex. D, Segovia Dep., 53:7-16). Plaintiff unequivocally testified that "the Aminogen part stuck out" and that "what separated [Defendant's product] from every other protein powder that [he] looked at before was the Aminogen aspect." (McDonald Decl., Ex. D, Segovia Dep., 53:20-24, 75:17-24.) At no point during his testimony

9

did Plaintiff state that lactase influenced his decision to purchase Defendant's product. Indeed, Plaintiff could not recall whether lactase was an ingredient in Defendant's protein supplement or if he had ever even heard of lactase before. Plaintiff further testified that, to his knowledge, he had never ingested a product containing lactase. *Id.*

Plaintiff's testimony indisputably evinces that he did not rely on the lactase claims on Defendant's label in his purchasing decision. Without demonstrating such reliance, Plaintiff cannot establish that Defendant breached an express warranty. This Court, therefore, grants summary judgment in Defendant's favor on Plaintiff's breach of express warranty claim.

## CONCLUSION

For the reasons stated above, Defendant's motion for summary judgment on all remaining claims is GRANTED. The Court respectfully directs the Clerk to terminate the motion at ECF No. 73. The Clerk of Court is also respectfully directed to enter judgment in favor of Defendant and close the case.

The Court notes that Defendant makes a passing request seeking leave to file a motion for sanctions against Plaintiff on the grounds that his opposition "lacks any merit, credibility, or a good faith basis." (Def.'s Reply in Supp. of Mot. Summ. J., at 1, ECF No. 82.) The Court cautions Defendant, however, that consistent with Second Circuit precedent, this Court exercises a "policy of restraint when awarding sanctions." *Sorenson v. Wolfson*, 683 F. App'x 33, 35 (2d Cir. 2017). With that in mind, Defendant is directed to inform the Court, in writing, no later than

December 18, 2017 if it nevertheless intends to seek leave to file a motion for sanctions.

Dated: December 12, 2017
      White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge